Our next case for this morning is Anthony Barnett v. Neal. Mr. Osbrook. Good morning. My name is Michael Osbrook. I represent Anthony Barnett in this appeal on a section 2254 case. No reasonable lawyer could have misunderstood the conditional writ that the district court issued in this case. So let me just tell you, Mr. Osbrook, I certainly take the point that if anyone thought that Mr. Barnett thought it was a tough choice between outright release and just another appeal in the Indiana courts, he would have liked outright release. But what baffles me about this case is that you do seem to agree, I'm thinking now of the question that our court certified, you seem to agree that even though it was the day after, or the month after for that matter, the date for release, that the district court possessed the power to extend the state's time to go to the Indiana Court of Appeals and ask that court to consider whether it would give him a new appeal. We all understand this wasn't something the Attorney General was going to do himself. And so it has that power. So if it has that power, then it's hard to see why Chief Judge Springman was abusing her discretion by thinking, well, let's ask the Indiana court. Maybe it might decide the evidence is stale, maybe it might say, no, we've had enough of Mr. Barnett, or maybe it would say yes. But she did exercise her discretion to allow the state that one last chance, even though maybe it had been sloppy or whatever caused this to happen. So explain to me why that isn't a big problem for you. Well, I don't deny that it's a big problem, Your Honor. Well, good, because I think it's a big problem. But we rely on a Castro case from the Ninth Circuit, and that is that the discretion of the district court is limited by Rule 6dB. But why isn't it in the interest of justice, broadly speaking, to give the state courts an opportunity to speak to this? Again, understanding that the state courts will make their own decision about it, and had the Indiana Court of Appeals for any reason said, no, we don't want to accept the late appeal, then he would have been released, because that was the nature of the conditional writ. But you agree that the district judge did not exceed the authority that she had by, on September 30th, bringing the state back in and proceeding as she did. I think there's a significant difference, first, Your Honor, between a request that occurs before the writ runs or has expired. That's just an extension of time. This is a rule, we really think that this is the state's request for more time after the writ has, the condition of the writ has expired. Well, I understand that argument. The problem with that argument, in a word, is Gilmore. You know, in Gilmore, we said the equitable power of the district court includes the ability to grant the state additional time beyond the period in the conditional writ. And that's what she did. I don't think Gilmore said anything about before or after the period expired. Right, but I think that the limits on the discretion of a district court after a writ has run are narrower, much narrower than the limits before the writ has run. Well, I mean, you could have made that argument. There are a lot of things that if you do it, whether it's extending time for an appeal or whether it's other things, it's easier to do while you're still inside the period. Well, I think we did, we have made the argument in this court that this is, what the state asked for needs to be treated as a 60B, as a motion under 60B-6 for relief from the judgment. Doesn't it look a little bit more like a 60B-1? Except that they didn't- A mistake? Possibly, except that under this court's decision in Nash v. Hepp, if the party seeking 60B relief doesn't specify the section of 60B, it's a 60B-6 motion. Well, it really doesn't matter here anyway, does it? Because 1, 2, and 3 in Rule 60 are subject to the one-year limitation for filing the motion, but this all happens at a fast clip. I mean, no one is anywhere in danger of blowing the one year. No, and that's actually interesting. In the Castro case from the Ninth Circuit, the lawyers actually waited a year after the writ had run. And we filed the motion to enforce the judgment the first hour the court was open, the day the writ became enforceable, and I am sure that if we had waited any longer, we would have been accused of having delay. And I think it's a- we think it's a 60B-6 question, and there has to be an extraordinary circumstance. And misunderstanding doesn't equal that? Is that what you're saying? We cite the case, I don't remember which it is, but the provisions of 60B don't overlap. Well, I think your answer to Judge Coleman's question is yes. Your argument says, you know, just misunderstanding the language, if we buy that, or worse, just lack of diligence, don't count. That's your position, is what you've said. It wasn't a trick question. No, it's a friendly question. I understand. I think we conceded in our opening brief also that if this court thinks that there was any reasonable way that the court's writ could have been misunderstood, we lose. We don't think that parties should be misled by writs, we just think that this, on any of three levels, from the language of the writ itself, from the discussion accompanying the writ, from the uniform practice in Indiana, to Brownskill saying, and all the cases saying, the purpose of conditional writs is to give the state the opportunity to cure the constitutional violation. I'd like to save my time. That would be fine. Mr. Martin. Good morning, may it please the court. The district court had discretion to grant the state the additional time to comply with the writtenness case. But you know, Mr. Martin, looking at this, I find the state's position to be preposterous. If the state had come in and said, we blew it, you know, we let the 120 days go by, we weren't keeping track of the calendar, and so now we're throwing ourselves on the mercy of the district court to give us some extra time to go to the Indiana Court of Appeals, I would totally have respected that. These things happen, you have a big caseload. The thought that any prisoner on the planet Earth would rather go to the Indiana Court of Appeals than be released outright after 120 days does not compute with me. It can't possibly have been the prisoner's responsibility to go to the Indiana Court of Appeals. That wasn't the relief he wanted. Your Honor, and the mistake was mine in that respect, that we did not file. But you make this argument, you're still making it in this court. And I do, Your Honor. You thought, you know, that somebody else was going to do this. I don't know whether you thought the tooth fairy was going to do it. I mean, it just seemed, just a straightforward we blew the deadline would have elicited much more sympathy from me. And Your Honor, I think, in lieu of my experience in these cases, I wish I had filed a notice in the Court of Appeals. It would have obviated the need for this appeal. It would have obviated the need for the additional transactions that occurred in the district court. But in this situation, it's not like, for example, in a capital case where the defendant has to be retried. And you get a judgment from the district court. And the district court says, the state is therefore directed to file appropriate pleadings to re-initiate prosecution. I mean, we're not prosecuting the appeal. This was not a trick order. No, it wasn't, Your Honor. And Mr. Barnett was keeping track of his 120 days. And he promptly goes into court and says, apparently, the state's not going to ask, I would like to be free. I think, Your Honor, that's the circumstance that had me misunderstanding. Because, if I may explain, it's the context of this case and the claim. No, it isn't. This case is exactly like Shaw. This case is exactly like several other cases that Mr. Alsbrook mentioned. Well, you're right, Your Honor. There are three cases, Shaw being the one, I think, that's the most prominent. And I was the attorney in Shaw, as well. And the situation is that, when Shaw came down, this court's opinion was clear that the state courts would rule on the state issue of law that was relevant to the ineffective assistance of appellate counsel issue. We sought certiorari, and cert was denied. And that was a long, drawn-out process, as seeking cert usually is. And at the end of that, we went into court, and we filed something very affirmative in that case, where we actually, because of the passage of time and the concern about not complying with the writ, we asked the court to actually open an appellate cause number. Something that really, and certainly the language of this judgment, wouldn't put on the state, because the state is simply letting the court know that this relief has been granted, and that he's entitled to this appeal if he asks for it. But why would he want the appeal if he's going to be released? I mean, it's just common sense. Because in this circumstance, this petitioner knew he was not, the state was not going to elect to release him. We didn't in Shaw. How did he know that? It's exactly the same issue. So that's why I thought, with him having the same counsel as Mr. Shaw, he knows what our position is on the issue, and the fact that we would like the Indiana Court of Appeals to decide the potential and the merits of this ineffective assistance claim. Here's the language. Within 120 days of this order, the state must either release the petitioner, that's one clause, or grant him leave to file a new direct appeal. So the state has a duty to release or take some action that will give him a new appeal. There is no language in that sentence imposing a duty on Mr. Barnett. Well, the duty under that language, and Your Honor, I'm not trying to argue to the court that I didn't drop the ball by filing a notice. If I could interject here. I think the problem and the reason why we're here is because this is the language that's used in the mandate line when a new trial is being granted, not when a new appeal is being granted. When the habeas writ is granted conditionally, but the state is given the option of either releasing the defendant or retrying him, it is the executive branch of state government that is in the driver's seat. They can either release him from custody, or they can go back to the state trial court and ask for a new trial date and retry him. This language should not be used when the issue is appellate ineffective assistance of counsel because it's not the executive branch of state government that quote unquote grants a new trial or a new appeal. It's the judicial branch of government, and somebody has to engage the machinery of the state court of appeals. And that's how I understand Judge Springman's decision on the motion for extension of time. That was the ambiguity that she was seizing on. It doesn't happen automatically. The state court doesn't swing into action by itself. Somebody has to alert it that the defendant in this case has the right to a new appeal. And you have done precisely this in Shaw and the other two cases, and actually as I understand it, it's possible with this Montgomery case that Indiana has now solved that problem. And henceforth, there won't be just these truncated new appeals. Henceforth, there are actually going to be either new trials or nothing. And so it may be that we're looking at a very small universe of cases that follow the pattern of this one. But this one had been, this problem had been solved before. And if the state looked at that and said, oh my gosh, Judge Springman's given us an obligation that we, the executive branch of the Indiana government, can't comply with, you certainly could have filed a motion for clarification with her. I have no reason to think she wouldn't have been happy to have fixed it, whatever fixed meant. You're right, Your Honor. And we don't abdicate our responsibility to make sure that these judgments are vindicated. And we want to be very proactive about that. And in this instance, and this is my fault personally, I believe that Mr. Osbrook, having received the judgment and knowing the lay of the land from what happened in the Shaw case, knew that we were not going to elect to release his client. That's a dangerous assumption, given the first half of the writ as worded by Judge Springman. You were really rolling the dice. Well, Your Honor, that is the basis of the misunderstanding. That is the basis of the mistake. And we believe that the district court was reasonable and equitable in allowing us to correct it on the day after the 120 days it had run. Has the proceeding finished, by the way? I understand it's been chugging along. It's briefed and there have been no oral arguments requested, but it's been fully briefed since January. So I would expect, I think that it's probably likely that the court will issue the Shaw and the Barnett opinions simultaneously as they basically address the same legal questions. This omnibus date thing, yeah. Okay. Just curious. If the court has no further questions, we believe the district court was within its discretion and we would ask the court to affirm. Okay. Thank you. You have about a minute, Mr. Ellsberg, a little bit. Thank you, Your Honor. I also want to address our 59E motion that Judge Springman denied, and that is that even when the state filed for the new appeal, it failed to serve Mr. Barnett. It served me instead. I did not represent Mr. Barnett in state court. The state never even moved to ask Judge Springman for more time so they could serve Mr. Barnett personally, and therefore he was deprived of his opportunity, for instance, to raise Montgomery in the state courts before the Indiana Court of Appeals issued its order starting a new appeal. Under this court's case in Pfeiffer, I believe, courts can certainly look into the process by which the habeas relief order is granted, and in this case it's facially a violation of due process. And I also want to call the court's attention to the fact that this is not just formal. Mr. Barnett ably represented himself all along the way in the state courts, so depriving him of the opportunity to answer the state's request to start a new appeal is significant. I don't believe I have anything else to add. Thank you. All right. Well, thank you very much. Thanks as well to the state. We will take the case under advisement.